UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

METROPOLITAN LIFE INSURANCE COMPANY

Plaintiff,

v. CASE NO.: CA 07 427ML

PAUL M. DRAINVILLE, JR.,
STEPHANIE M. DRAINVILLE, and
LAURA DRAINVILLE,

Defendants.

**DEFENDANT, LAURA DRAINVILLE'S ANSWER TO AMENDED COMPLAINT IN INTERPLEADER AND CROSS-CLAIM**

Defendant, Laura Drainville, serves her answer to Plaintiff's Amended Complaint in Interpleader and serves her Cross-Claim against Paul M. Drainville, Jr., and Stephanie M. Drainville as follows:

**ANSWER TO PLAINTIFF'S AMENDED COMPLAINT**

1. Admitted.
2. Denied.
3. Admitted.
4. Admitted.
5. Admitted.
6. Admitted.
7. Admitted.
8. Admitted.
9. Admitted.
10. Admitted.
11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. Denied.

23. Admitted.

24. Admitted.

25. Admitted.

26. Admitted.

27. Admitted.

28. Admitted.

29. Admitted.

30. Admitted.

31. Admitted.

32. Denied.

**CROSS-CLAIM AGAINST PAUL M. DRAINVILLE, JR. ("PAUL JR.")**

33. Defendant, Paul M. Drainville, Jr. ("Paul Jr.") is the adult son of Decedent and a citizen of Rhode Island. His date of birth is September 5, 1975.

34. Laura Drainville ("Laura") is the widow of Decedent and a citizen of Florida. The Decedent passed away on June 15, 2007.

35. Decedent was employed with New England Telephone Company ("NETC") which merged with NYNEX (New York & New England). On approximately August 14, 1997, NYNEX was acquired by Bell Atlantic.

36. Then on June 20, 2002, Bell Atlantic and GTE merged to become Verizon.

37. At the time of Decedent's death, he was retired from his employment with Verizon.

38. Decedent obtained his life insurance from the Verizon Group Life Insurance Plan and a copy of the Summary Plan Description for the plan is attached as Exhibit "A" to this Cross-claim.

39. As a Verizon employee, Decedent participated in the plan and elected basic ("Basic Life") and optional ("Optional Life") coverage.

40. Decedent's Basic Life coverage provided a benefit of $10,000.00. The Optional Life coverage as selected by Decedent provided a benefit of two times his annual rate of pay with Verizon at the time of his retirement in the amount of $164,000.00. The combined value of the Basic Life and Optional Life coverage is $174,000.00.

41. On or about May 7, 2001, Decedent executed a Life Insurance Beneficiary Designation Form, designating Laura as the sole primary beneficiary of his Basic and Optional Life coverage. A true and correct copy of the beneficiary designation form is attached as Exhibit "B" to this Cross-claim.

42. MetLife was notified by Laura of the Decedent's death and $174,000.00 of combined plan benefit became payable under the terms of the plan.

43. On or about August 6, 2007, MetLife received a Life Insurance Claim Form from Laura in which she claimed the Basic and Optional Life benefit. A true and correct copy of the Life Insurance Claim form is attached as Exhibit "C" to this Cross-claim.

44. On or about August 13, 2007, MetLife received correspondence from Pamela Drainville ("Pamela"), the ex-wife of Decedent and the mother of Paul Jr. and Stephanie. Pamela attached a Rhode Island divorce decree which is attached as Exhibit "D" to this Cross-claim. Pamela claimed that Section 3.4 of the divorce decree regarding the maintenance of life insurance would potentially make Paul Jr. and Stephanie beneficiaries of the Verizon life insurance proceeds.

45. Section 3.4 of the divorce decree provides, in part, "Until the youngest child's 22nd birthday, the parties shall each maintain the children as primary beneficiaries (in equal shares) of each party's life insurance which is currently provided through each party's employment by New England Telephone Company. The face amount of the coverage currently is three times each party's annual earnings; and the parties shall maintain that level of coverage so long as the employer provides it as an employment benefit."

46. Due to a claim of competing interest, MetLife refused to make a claims decision and instead claimed it was unable to determine whether the terms of paragraph 3.4 of the divorce decree was sufficient to be a Qualified Domestic Relations Order ("QDRO") sufficient to challenge the primary designation of Laura as beneficiary by the Decedent.

47. The Verizon Optional Life Policy of $164,000.00 is a supplemental coverage which was never provided as an employee benefit of Decedent while employed by NETC. The "Verizon Benefits Retiree Overview states that the Decedent must "pay the <u>entire</u> cost of your retiree

supplemental life insurance coverage . . . ." a copy of the Verizon Benefits Retiree Overview is attached as Exhibit "E" to this Cross-claim.

48. Under "Retiree Supplemental Life Insurance", the document states "The Retiree Supplemental Life Insurance Plan pays benefits to your beneficiary if you die while covered by the plan. Your beneficiary will need to file a claim to receive benefits." The "Cost of Coverage," states as follows "You will be billed for the full cost of this coverage unless you choose to have the deductions taken from your pension check or to have your bank account directly debited for the cost of coverage." A copy of the "Retiree Supplemental Life Insurance" is attached as Exhibit "F" to this Cross-claim.

49. The Decedent's pension checks which are attached as Exhibit "G" to this Cross-claim indicate that payments were made pursuant to "Supplement GRP INS" which Verizon identified as being an employee paid for benefit.

50. The confirmations of coverage attached as Exhibit "H" to this Cross-claim for 2002, 2003, 2004 and 2005 only identify retiree basis life of $10,000.00 as being a covered benefit for Decedent through his employer. It was not until the 2006 and 2007 confirmations of coverage did Decedent supplemental life insurance even appear on Verizon documentation. A copy of the Confirmation of Coverage for 2006 is attached in Exhibit "H".

51. It is Laura Drainville's position that the divorce decree attached as Exhibit "D" is legally deficient as a QDRO as it fails to comport with IRC414(p)(2)(D) ERISA 206(d)(e)(c)(i)(v). Paragraph 3.4 only identifies NETC and limits its applicability only "so long as the employer provides it as an employee benefit." A QDRO must clearly identify the plan and must name the plan under which the benefits are being assigned.

52. Paragraph 3.4 of Pamela's divorce decree fails to meet the standard for a QDRO.

53. Laura is entitled to the $174,000.00 in combined life insurance benefits or, in the alternative, is entitled to $164,000.00 in Optional Life coverage and Paul and Stephanie are equally entitled to $10,000.00 if the Court determines that paragraph 3.4 of Pamela's divorce decree qualifies as a QDRO.

WHEREFORE, Cross-Claimant, Laura Drainville, respectfully requests:

(A) this Court find that paragraph 3.4 of the divorce decree fails to meet the requirements to be a Qualified Domestic Relations Order under Federal Law;

(B) that Laura Drainville is the proper beneficiary under the beneficiary designation provided to MetLife on or about May 7, 2001;

(C) that the $164,000.00 optional life coverage is a supplemental benefit not contemplated and not properly designated as a part of Qualified Domestic Relations Order as determined by this Court;

(D) that the $10,000.00 optional life coverage is a benefit not properly designated as a part of Qualified Domestic Relations Order as determined by this Court;

and

(E) that the Court grant Laura Drainville any other relief as may be deemed just and proper by this Court.

**<u>CROSS-CLAIM AGAINST STEPHANIE M. DRAINVILLE ("STEPHANIE")</u>**

54. Defendant, Stephanie M. Drainville ("Stephanie") is the adult daughter of Decedent and a citizen of Rhode Island. Her date of birth is July 8, 1989.

55. Laura Drainville ("Laura") is the widow of Decedent and a citizen of Florida. The Decedent passed away on June 15, 2007.

56. Decedent was employed with New England Telephone Company ("NETC") which merged with NYNEX (New York & New England). On approximately August 14, 1997, NYNEX was acquired by Bell Atlantic.

57. Then on June 20, 2002, Bell Atlantic and GTE merged to become Verizon.

58. At the time of Decedent's death, he was retired from his employment with Verizon.

59. Decedent obtained his life insurance from the Verizon Group Life Insurance Plan and a copy of the Summary Plan Description for the plan is attached as Exhibit "A" to this Cross-claim.

60. As a Verizon employee, Decedent participated in the plan and elected basic ("Basic Life") and optional ("Optional Life") coverage.

61. Decedent's Basic Life coverage provided a benefit of $10,000.00. The Optional Life coverage as selected by Decedent provided a benefit of two times his annual rate of pay with Verizon at the time of his retirement in the amount of $164,000.00. The combined value of the Basic Life and Optional Life coverage is $174,000.00.

62. On or about May 7, 2001, Decedent executed a Life Insurance Beneficiary Designation Form, designating Laura as the sole primary beneficiary of his Basic and Optional Life coverage. A true and correct copy of the beneficiary designation form is attached as Exhibit "B" to this Cross-claim.

63. MetLife was notified by Laura of the Decedent's death and $174,000.00 of combined plan benefit became payable under the terms of the plan.

64. On or about August 6, 2007, MetLife received a Life Insurance Claim Form from Laura in which she claimed the Basic and Optional Life benefit. A true and correct copy of the Life Insurance Claim form is attached as Exhibit "C" to this Cross-claim.

65. On or about August 13, 2007, MetLife received correspondence from Pamela Drainville ("Pamela"), the ex-wife of Decedent and the mother of Paul Jr. and Stephanie. Pamela attached a Rhode Island divorce decree which is attached as Exhibit "D" to this Cross-claim. Pamela claimed that Section 3.4 of the divorce decree regarding the maintenance of life insurance would potentially make Paul Jr. and Stephanie beneficiaries of the Verizon life insurance proceeds.

66. Section 3.4 of the divorce decree provides, in part, "Until the youngest child's 22nd birthday, the parties shall each maintain the children as primary beneficiaries (in equal shares) of each party's life insurance which is currently provided through each party's employment by New England Telephone Company. The face amount of the coverage currently is three times each party's annual earnings; and the parties shall maintain that level of coverage so long as the employer provides it as an employment benefit."

67. Due to a claim of competing interest, MetLife refused to make a claims decision and instead claimed it was unable to determine whether the terms of paragraph 3.4 of the divorce decree was sufficient to be a Qualified Domestic Relations Order ("QDRO") sufficient to challenge the primary designation of Laura as beneficiary by the Decedent.

68. The Verizon Optional Life Policy of $164,000.00 is a supplemental coverage which was never provided as an employee benefit of Decedent while employed by NETC. The "Verizon Benefits Retiree Overview states that the Decedent must "pay the <u>entire</u> cost of your retiree supplemental life insurance coverage . . . ." a copy of the Verizon Benefits Retiree Overview is attached as Exhibit "E" to this Cross-claim.

69. Under "Retiree Supplemental Life Insurance", the document states "The Retiree Supplemental Life Insurance Plan pays benefits to your beneficiary if you die while covered by the plan. Your beneficiary will need to file a claim to receive benefits." The "Cost of Coverage," states as follows "You will be billed for the full cost of this coverage unless you choose to have the

deductions taken from your pension check or to have your bank account directly debited for the cost of coverage." A copy of the "Retiree Supplemental Life Insurance" is attached as Exhibit "F" to this Cross-claim.

70. The Decedent's pension checks which are attached as Exhibit "G" to this Cross-claim indicate that payments were made pursuant to "Supplement GRP INS" which Verizon identified as being an employee paid for benefit.

71. The confirmations of coverage attached as Exhibit "H" to this Cross-claim for 2002, 2003, 2004 and 2005 only identify retiree basis life of $10,000.00 as being a covered benefit for Decedent through his employer. It was not until the 2006 and 2007 confirmations of coverage did Decedent's supplemental life insurance even appear on Verizon documentation. A copy of the Confirmation of Coverage for 2006 is attached in Exhibit "H".

72. It is Laura Drainville's position that the divorce decree attached as Exhibit "D" is legally deficient as a QDRO as it fails to comport with IRC414(p)(2)(D) ERISA 206(d)(e)(c)(i)(v). Paragraph 3.4 only identifies NETC and limits its applicability only "so long as the employer provides it as an employee benefit." A QDRO must clearly identify the plan and must name the plan under which the benefits are being assigned.

73. Paragraph 3.4 of Pamela's divorce decree fails to meet the standard for a QDRO.

74. Laura is entitled to the $174,000.00 in combined life insurance benefits or, in the alternative, is entitled to $164,000.00 in Optional Life coverage and Paul and Stephanie are equally entitled to $10,000.00 if the Court determines that paragraph 3.4 of Pamela's divorce decree qualifies as a QDRO.

WHEREFORE, Cross-Claimant, Laura Drainville, respectfully requests:

(A) this Court find that paragraph 3.4 of the divorce decree fails to meet the requirements to be a Qualified Domestic Relations Order under Federal Law;

(B) that Laura Drainville is the proper beneficiary under the beneficiary designation provided to MetLife on or about May 7, 2001;

(C) that the $164,000.00 optional life coverage is a supplemental benefit not contemplated and not properly designated as a part of Qualified Domestic Relations Order as determined by this Court;

(D) that the $10,000.00 optional life coverage is a benefit not properly designated as a part of Qualified Domestic Relations Order as determined by this Court; and

(E) that the Court grant Laura Drainville any other relief as may be deemed just and proper by this Court.

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Answer to Amended Complaint in Interpleader and Cross-Claim has been served by first-class mail, postage prepaid, to: Timothy M. Bliss, Esquire, VETTER & WHITE, 20 Washington Place, Providence, RI 02903; Brooks R. Magratten, Esquire, VETTER & WHITE, 20 Washington Place, Providence, RI 02903; John D. Lynch, Jr., Esquire, Lynch & Friel, 600 Toll Gate Rd., Warwick, RI 02886; Paul M. Sanford, Esquire, BURNS & LEVINSON LLP, One Citizens Plaza - Suite 1100, Providence, RI 02903 on this the 15th day of February, 2008.

John D. Lynch, Jr., Esquire
RI State Bar No.: 5348
Lynch and Friel
600 Tollgate Rd.
Warwick, RI 02886
Telephone: (401) 739-8500
Facsimile: (401) 738-0649
Attorney for Defendant, Laura Drainville

Also served on: Hans Kennon, Esq.