EXHIBIT "D"

August 13, 2007

To: Met Life Insurance
Verizon Team E

From: Pamela Drainville

Ref: Inquiry Regarding Verizon Life Insurance relative to the death of Paul Michael Drainville

This is an inquiry to review the attached divorced decree statement on page 3 section 3.4 relative to who the beneficiaries should be on the life insurance policy for Paul Michael Drainville. The children are Paul Michael Drainville, Jr. (DOB 9/5/75) and Stephanie Michael Drainville (DOB 7/8/89). This was entered into action on November 22, 1991 and has never been changed.

We would appreciate your assistance in this review.

I can be reached on 508-551 6000 (Verizon) or 401-952-1486 (cell).

Thank you

Pamela Drainville

STATE OF RHODE ISLAND
AND
PROVIDENCE PLANTATIONS

FINAL JUDGMENT

| | | | |
|---|---|---|---|
| COUNTY: PROVIDENCE | | | CIVIL ACTION - FILE NO. P91-2427 |
| PLAINTIFF: PAUL GRAINVILLE | VS. | | DEFENDANT: PAMELA [illegible]. BRAINVILLE |

☒ ANSWERED ☐ UNANSWERED

This action came on for trial before the Court, General Master O'Brien presiding, and the issues having been tried and a decision having been duly rendered in favor of Plaintiff/Defendant on the 22 day of November, 191

NOW THEREFORE, three months having elapsed and no reason appearing why a final judgment should not be entered, it is ordered, adjudged and decreed that the Plaintiff's Complaint and Defendant's Counterclaim is/are hereby granted and that the bond of matrimony now existing between the parties be, and the same is, hereby dissolved upon the ground(s) of irreconcilable differences which have arisen between the parties leading to the irremediable breakdown of the marriage and it is further

ORDERED, ADJUDGED and DECREED

1. Findings of fact appear in the Decision Pending Entry of Final Judgment.

2. The parties are awarded joint custody of the minor children, Paul d/o/b September 5, 1975 and Stephanie d/o/b July 8, 1989, with the mother to have physical possession and the father to have reasonable visitation rights as set forth in the Property Settlement Agreement.

3. The plaintiff father shall pay child support to the mother in the amount of $750 per month, and additionally shall pay half the tuition at LaSalle Academy for the child, Paul, as set forth in the Property Settlement Agreement.

4. The Property Settlement Agreement entered into between the parties on November 22, 1991 and filed with the Court is approved by the Court and shall be incorporated in its Judgment, but not merged therein.

5. Both parties are permitted to permanently waive alimony.

☐ Check this box if a continuation page is used.

Dated at Providence, Rhode Island, this 25 day of [illegible], 1992

Approved: [illegible] 2/25/92
(Justice or General Master)

Entered: [illegible]
(Clerk)

Presented by attorney for prevailing party:

Attorney's Name (Print): Amy R. Tabor

Attorney's Signature: [illegible]

DR 11 (Rev.2/91)

the change. The parties shall share visitation during holidays, and each parent shall have the right to reasonable periods of vacation with the children.

3.2.1 The Husband shall pay to the Wife as child support $750 per month;

3.2.2 As additional child support, the Husband shall pay to LaSalle Academy one-half of the tuition bills for the Parties' son, Paul Jr. (as and when the tuition bills fall due).

3.3 So long as the parties are entitled to family plan health insurance through their employment, they shall ensure that the children remain as beneficiaries so long as the children are eligible for coverage. The parties shall cooperate in choosing that combination of coverages which results in the lowest total cost for coverage, and will share equally in the cost (if any) of coverage. They will arrange for any necessary reimbursements from one to the other to accomplish equal payment. The parties shall share equally in the cost of the children's reasonable and necessary medical and dental care, to the extent not covered by insurance.

3.4 Until the youngest child's 22nd birthday, the parties shall each maintain the children as primary beneficiaries (in equal shares) of each party's life insurance which is currently provided through each party's employment by New England Telephone Company. The face amount of the coverage currently is three times each party's annual earnings; and the parties shall maintain that level of coverage so long as the employer provides it as an employment benefit. Eac~~h party shall name a co-trustee for the children, the two co-trustees being responsible for management of the life insurance proceeds, for the children's reasonable needs for support and education. Each co-trustee shall be required to consent in writing to the appointment, after the other co-trustee has been identified~~. The husband shall name his brother Stephen Drainville as trustee and the wife shall name her brother Saverio Besachio as trustee of the life insurance proceeds.

3.5 Each parent shall contribute to each child's reasonable and necessary costs of college tuition and expenses, to the extent of each parent's ability to pay at the time the expense must be incurred.

4. <u>PROPERTY DIVISION</u>

4.1 Each party shall have sole title to his or her own pension funds and 401(k) plans.

4.2 The Honda Accord shall be awarded to the Wife, the parties intending that it be used by, and become the property of, their son Paul Jr. The Audi shall remain the property of the Husband.

4.3 The Wife shall retain as her sole property all of the contents of the marital domicile, with the exception of those items on the list attached hereto as Exhibit A, which shall become the sole property of the Husband. He shall recover the items at a mutually convenient time to be arranged by the parties.

4.4 The Parties hold record title to improved real estate located at 1 Henry Drive, Barrington, Rhode Island. They agree that the premises shall be sold at fair market value, on such terms and conditions as they may mutually agree (and neither Party shall impose unreasonable conditions or unreasonably withhold consent to a sale). After deduction of all outstanding debts in connection with the property (including the equity line of credit, first and second mortgage loans, taxes and assessments) and all costs of sale (including reasonable broker's and attorney's fees) the net proceeds of sale shall be utilized as follows:

4.4.1 First, the outstanding bills on the list attached hereto as Exhibit B shall be paid. PAID

4.4.2 Second, the Wife shall be paid ~~$3360~~ $2,750, representing the value of the Audi transferred to the Husband.

4.4.3 Any proceeds remaining will be divided equally between the parties.

4.5 Except as otherwise specifically provided in this Agreement, all bank and other accounts or investments, IRA accounts, certificates of deposit, stocks or brokerage accounts, trusts, pension or retirement plans and any other properties or interests of value now standing in the Husband's name or maintained for his benefit shall go and belong to him as his separate property, free of any claims of the Wife.

4.6 Except as otherwise specifically provided in this Agreement, all bank and other accounts or investments, IRA accounts, certificates of deposit, stocks or brokerage accounts, trusts, pension or retirement plans and any other properties or interests of value now standing in the Wife's name or maintained for her benefit shall go and belong to her as her separate property, free of any claims of the Husband.

4.7 Except as provided in section 4.4, each party shall be responsible for any credit card or other debt incurred by him or her after September 12, 1991. Except as otherwise specifically provided in this Agreement, neither Party shall charge or cause to be charged to or against the other Party any purchase, nor create any obligation in the name of or against the other Party, nor secure or attempt to secure any credit upon or in connection with the other Party, or in the other Party's name.

Each Party shall promptly pay all of his or her debts and discharge all of his or her financial obligations and shall indemnify the other Party against any and all such debts and other obligations of any kind. With the exception of those debts or creditors specifically provided for in this Agreement, each Party covenants and represents that he or she has not incurred or contracted any debt, charge or liability whatsoever for which the other Party or his or her property or estate is now or may hereafter become liable.

4.8 Except as otherwise specifically provided in this Agreement, all the property of each of the Parties, both real and personal, now owned by him or her, or to which he or she may hereafter become entitled, shall be and remain his or her sole and separate property, free from all rights of the other Party with full power in the Party owning such property to deal with or otherwise dispose of the same as if he or she were single. Each of the Parties shall, from time to time, execute all such deeds and other instruments as may be necessary or useful to enable the other Party to convey, sell, assign, give or otherwise deal with all of his or her property, both real and personal (including not only property which each now owns but also that which each may own or possess in the future), and each Party shall release and quitclaim unto the other, or to such others as a requesting Party shall designate, all of the releasing Party's rights of curtesy, dower and all other rights, statutory or otherwise, in and to any real estate of which the other Party is or may become seized or possessed or to which he or she may otherwise be or become entitled. It is the intent of this clause to permit and empower each of the Parties to deal with his or her own separate property, now owned or hereafter acquired, without any let, hindrance, claim, demand or assertion of right of or by the other Party and in all respects as if each Party hereto were single.

4.9 On the death of either Party in the lifetime of the other, whether or not a Final Judgment of Divorce has been entered between them, all of the estate of the Party so dying, both real and personal, which he or she shall not have disposed of in his or her lifetime or by Will, shall, subject to the debts and engagements of the deceased Party, go and belong to the person or persons who would have become entitled thereto if the Party surviving had instead died in the lifetime of the Party so dying. In that event, the surviving Party shall permit the Will of the Party so dying to be proved, or administration upon the personal estate of the Party so dying to be taken out by the person or persons who would have been entitled to do so had the surviving Party died during the lifetime of the deceased Party, except to the extent that the Will of the deceased Party shall otherwise provide. Any such Will, with respect to the real and personal property therein disposed of, shall have the same force and effect as it would have had if the surviving Party had predeceased the Party so dying, except to the extent that the

Will of the deceased Party shall otherwise provide. The provisions of this paragraph shall be deemed effective to bar any common law or statutory rights of the surviving Party, arising by reason of the marriage between the Parties and under the law of any and all jurisdictions where property of the Party so dying may be located, to which the surviving Party would otherwise be entitled were it not for the provisions of this paragraph.

4.10 Except as otherwise more specifically provided herein, the Parties have divided their real, personal, tangible and intangible property to their mutual satisfaction. With the exception of those properties and interests specifically referred to in this Agreement, each Party agrees that any real estate, stocks, bonds, bank accounts, investments, pension or retirement interests, or any of the real or personal, tangible or intangible property standing in the name of a Party (either alone or with any third person, partnership or corporation) shall be deemed and considered to be, insofar as each Party is concerned, the property of the Party in whose name the same is, free of any and all claims of the other Party, who hereby releases any and all interest therein.

5. <u>WAIVERS</u>.

5.1 Except as specifically provided in this Agreement, the Husband permanently waives any form of property division, distribution or assignment of any assets of the Wife; and also waives any form or amount of spousal support or alimony and agrees that a provision to this effect shall be included in any judgment, decision, order or decree entered in any action of divorce affecting the Parties.

5.2 Except as specifically provided in this Agreement, the Wife permanently waives any form of property division, distribution or assignment of any assets of the Husband; and also waives any form or amount of spousal support or alimony and agrees that a provision to this effect shall be included in any judgment, decision, order or decree entered in any action of divorce affecting the Parties.

5.3 Except to the extent specifically provided in this Agreement, each Party specifically and permanently waives any right to demand or request judicial modification of the terms of this Agreement.

6. <u>TAX RETURNS</u>.

6.1 The Parties shall file joint federal and state income tax returns for the tax year ending December 31, 1991, and shall share equally in any taxes to be paid or refunds to be received thereon.

6.2 For so long as both children are eligible to be claimed as dependents, the Husband shall claim Paul Jr. and the Wife shall claim Stephanie. When only one child remains eligible for the dependency exemption, the parties shall claim it in alternating years, and shall decide the right to claim in the first year by a coin flip.

7. MISCELLANEOUS.

7.1 The Parties hereto shall, at any time and from time to time, execute and deliver all such documents and all other assurances and do all such things as the other Party, or his or her heirs, executors or administrators, shall reasonably require for the purpose of giving full effect to this Agreement and the provisions contained herein.

7.2 It is understood and agreed that nothing in this Agreement shall constitute either an obligation, agreement or commitment by either Party to seek a divorce from the other or to process any pending petition or suit for divorce, nor shall it constitute a waiver or release of a Party's right to contest any such proceedings for divorce or to claim that no cause for divorce exists or otherwise in any way to exercise all legal rights or remedies permitted to him or her in relation to any such proceedings.

7.3 In the event either Party is granted a preliminary or interlocutory Decision or Judgment of Divorce from the other Party, the Parties hereby authorize counsel for either Party to enter a Final Judgment of such Divorce at the earliest time at which such Judgment may be entered.

7.4 In the event that a Judgment of Divorce is granted to either Party by a court of competent jurisdiction, and if consistent with the rules and practices of the Court granting the Judgment of Divorce, this Agreement shall be incorporated in such Judgment, but, notwithstanding such incorporation, this Agreement shall not be merged in such Judgment but shall in all respects survive the same and remain in full force and effect.

7.5 The Parties acknowledge that each is fully familiar with the assets, income and business interests of the other Party and have been fully informed in respect to same during their marriage. They have, during a series of conferences between themselves, mutually agreed upon the arrangements set forth herein. They have retained legal counsel primarily for the purpose of setting forth their understandings in this written Agreement. The provisions of this Agreement and their legal effect have been fully explained to the Parties by their respective counsel and each Party acknowledges that the Agreement is fair and equitable, that it is being entered into voluntarily and that it is not the result of any duress or undue influence. This

Agreement contains the entire understanding of the Parties and there are no representations, warranties, covenants or undertakings other than those expressly set forth herein.

7.6 A modification or waiver of any of the provisions of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement. The failure of either Party to insist upon strict performance of any of the provisions of this Agreement shall not be construed as a waiver of any subsequent default of the same or similar nature. If any provision of this Agreement is held to be invalid or unenforceable, all other provisions shall nevertheless continue in full force and effect.

7.7 In the event of a breach of this Agreement, the breaching party shall be liable for all costs and expenses reasonably necessary to the enforcement of the terms of this Agreement, including reasonable attorneys's fees.

7.8 This Agreement has been prepared in the State of Rhode Island and shall be interpreted in accordance with the laws of said State.

7.9 Except as otherwise stated herein, all of the provisions of this Agreement shall be binding upon the respective heirs, executors, administrators and assigns of the Parties.

IN WITNESS WHEREOF, the Parties have executed and acknowledged this Agreement in several counterparts, each of which shall be deemed an original.

Pamela Drainville (Wife)

Paul Drainville (Husband)

STATE OF RHODE ISLAND
COUNTY OF Prov

In Providence, on the 22d day of November, 1991, before me personally appeared PAMELA DRAINVILLE, to me known and known by me to be one of the Parties executing the foregoing instrument, and she acknowledged said instrument by her executed to be her free act and deed.

Notary Public

STATE OF RHODE ISLAND
COUNTY OF Prov

In Providence, on the 22d day of November, 1991, before me personally appeared PAUL DRAINVILLE, to me known and known by me to be one of the Parties executing the foregoing instrument, and he acknowledged said instrument by him executed to be his free act and deed.

Notary Public.