UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| METROPOLITAN LIFE INSURANCE | : | |
| COMPANY, | : | |
|         Plaintiff, | : | |
| | : | |
|    v. | : | CA 07-427 ML |
| | : | |
| PAUL M. DRAINVILLE, JR., | : | |
| STEPHANIE M. DRAINVILLE, | : | |
| and LAURA DRAINVILLE, | : | |
|         Defendants. | : | |

_____

| | |
|---|---|
| PAUL M. DRAINVILLE, JR., | : |
| STEPHANIE M. DRAINVILLE, | : |
|       Cross-Claim Plaintiffs, | : |
| | : |
|    v. | : |
| | : |
| LAURA DRAINVILLE, | : |
|       Cross-Claim Defendant. | : |

_____

| | |
|---|---|
| PAUL M. DRAINVILLE, JR., | : |
| and STEPHANIE M. DRAINVILLE, | : |
|       Third-Party Plaintiffs, | : |
| | : |
|    v. | : |
| | : |
| THE ESTATE OF PAUL M. DRAINVILLE, | : |
| SR., by and through its EXECUTRIX, | : |
| LAURA DRAINVILLE, | : |
|       Third-Party Defendant. | : |

_____

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the Court is the Rule 12(b)(1) and Rule 12(b)(6)
Motion to Dismiss Paul M. Drainville, Jr. and Stephanie M.

Drainville's First Amended Crossclaim against Laura Drainville
(Doc. #46) ("Motion to Dismiss" or "Motion").  The Motion has
been referred to me for preliminary review, findings, and
recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).
For the reasons explained below, I recommend that the Motion to
Dismiss be granted in part and denied in part.

## I.  Facts[1] and Travel

Paul M. Drainville, Sr. ("Paul Sr."), and Pamela Drainville
("Pamela") divorced in 1991.  They had two children, Paul M.
Drainville, Jr. ("Paul Jr."), who was then sixteen years old, and
Stephanie M. Drainville ("Stephanie"), who was then two years
old.

In connection with their divorce, Paul Sr. and Pamela
entered into a property settlement agreement (the "Agreement")
which was filed with and approved by the Rhode Island Family
Court and which was incorporated but not merged into the final
judgment of divorce.  Pursuant to the Agreement, Paul Sr. was
required to maintain the children as primary beneficiaries, in
equal shares, of his life insurance.  The Agreement specified
that the amount of the life insurance coverage was to be equal to
three times Paul Sr.'s annual earnings and that he was to
maintain this coverage until the youngest child's twenty-second
birthday.[2]  The Agreement further provided that Paul Sr. was to
contribute to each child's reasonable and necessary costs of
college tuition and expenses.  Stephanie has been enrolled as a
full-time student at Northeastern University since 2007.

At some point following the divorce, Paul Sr. married Laura

---

[1] Unless otherwise indicated, the facts are taken from the
First Amended Cross-Claim of Paul M. Drainville, Jr. and
Stephanie M. Drainville (Doc. #44) ("Amended Cross-Claim").

[2] Stephanie will not attain twenty-two years of age until
2011.

2

Drainville ("Laura"), who is now a resident of Florida.  Amended
Complaint in Interpleader (Doc. #3) ("Amended Complaint") ¶ 6
(describing Laura as the widow of Paul Sr. and the stepmother of
Paul Jr. and Stephanie).  On or about May 7, 2001, Paul Sr.
executed a beneficiary form, designating Laura as the sole
primary beneficiary of his life insurance coverage.  See id. ¶
16.

     Paul Sr. died on June 15, 2007.  See id. ¶ 17.  As a result,
a group life insurance policy, which was part of an employee
welfare benefit plan (the "Plan") provided by Paul Sr.'s
employer, Verizon Communications, Inc. ("Verizon"), and issued by
Metropolitan Life Insurance Company ("MetLife") became payable
under the terms of the Plan.  See id. ¶¶ 11-14.  The value of the
group life insurance is $174,000, which is twice Paul Sr.'s
annual pay at the time of his death.  See id. ¶ 15.

     On or about August 6, 2007, MetLife received a claim form
from Laura, seeking payment of the life insurance.  See id. ¶ 18.
A week later, MetLife received correspondence from Pamela which
enclosed a copy of the Agreement and directed MetLife's attention
to the provision requiring Paul Sr. to maintain life insurance
coverage for the children's benefit.  See id. ¶ 20.

     Faced with these competing claims, MetLife wrote to Laura,
Paul Jr., and Stephanie, advising them that it had received
competing claims for the life insurance proceeds, that it could
not resolve these claims without exposing the Plan to double
liability, and that it was required to commence an interpleader
action unless Laura, Paul Jr., and Stephanie were able to resolve
their controversy among themselves within thirty days.  See id. ¶
23.  On or about October 29, 2007, before MetLife filed an
interpleader action, Paul Jr. and Stephanie filed an action
against MetLife in the Providence County Superior Court based on
MetLife's failure to interplead or pay them the life insurance

3

proceeds.  See id. ¶ 24.  The following day, October 30, 2007, Laura filed an action against MetLife in the United States District Court for the Middle District of Florida, Orlando Division, seeking payment of the life insurance proceeds.  See id. ¶ 25.

In response to the two lawsuits, MetLife filed the instant interpleader action in this Court on November 21, 2007, and five days later filed an Amended Complaint.  On January 25, 2008, Paul Jr. and Stephanie answered the Amended Complaint and counterclaimed against MetLife.  In their counterclaim, they alleged that MetLife had breached its fiduciary duty by failing to pay the life insurance proceeds to them, by not timely filing an interpleader action, and by waiting more than seven months to deposit the proceeds with any court registry.  See Answer to Amended Complaint, Counterclaim, Cross-Claim, and Third-Party Complaint of Paul M. Drainville, Jr., and Stephanie M. Drainville (Doc. #14) ("Answer") ¶ 20.  Paul Jr. and Stephanie also crossed-claimed against Laura and subsequently amended that cross-claim, see First Amended Cross-Claim of Paul M. Drainville, Jr. and Stephanie M. Drainville (Doc. #44) ("Amended Cross-Claim").

In Count I of their Amended Cross-Claim, Paul Jr. and Stephanie ("Cross-Claim Plaintiffs"), allege that Laura has been unjustly enriched by receiving Paul Sr.'s real and personal assets, some which they contend should have been used to satisfy the obligations which Paul Sr. owed to them under the Agreement. Amended Cross-Claim ¶¶ 32-37.  In Count II, they charge Laura with tortious interference with their rights under the Agreement. See id. ¶¶ 47-53.  In Count III (which is subtitled "Conversion – Life Insurance Proceeds and Assets"), they allege that Laura, by making a claim to the insurance proceeds and by exercising dominion and control over real and personal property, has caused them to suffer damages.  See id. ¶¶ 57, 65-67.  In Count IV, they

4

seek a declaratory judgment that they are entitled to receive the insurance proceeds.  <u>See</u> <u>id.</u> ¶¶ 68-76.

Laura filed the instant Motion to Dismiss on July 3, 2008. A hearing was held on August 27, 2008.  Thereafter, the matter was taken under advisement.

## II.  Standard of Review

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must view the stated facts in the light most favorable to the pleader, <u>In Re Credit Suisse First Boston Corp.</u>, 431 F.3d 36, 51 (1st Cir. 2005); <u>see also</u> <u>Greater Providence MRI Ltd. P'ship v. Med. Imaging Network of S. New England, Inc.</u>, 32 F.Supp.2d 491, 493 (D.R.I. 1998), taking all well-pleaded allegations as true and giving the pleader the benefit of all reasonable inferences that fit the pleader's stated theory of liability, <u>Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev.</u>, 421 F.3d 1, 5 (1st Cir. 2005); <u>see also</u> <u>Arruda v. Sears, Roebuck & Co.</u>, 310 F.3d 13, 18 (1st Cir. 2002).  If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied. <u>See</u> <u>Brown v. Hot, Sexy & Safer Prods., Inc.</u>, 68 F.3d 525, 530 (1st Cir. 1995); <u>Hart v. Mazur</u>, 903 F.Supp. 277, 279 (D.R.I. 1995); <u>see also</u> <u>Arruda v. Sears, Roebuck & Co.</u>, 310 F.3d at 18 ("[W]e will affirm a Rule 12(b)(6) dismissal only if 'the factual averments do not justify recovery on some theory adumbrated in the complaint.'")(citation omitted).[3]  The Court, however, is not

---

[3] In their memorandum, Paul Jr. and Stephanie ("Cross-Claim Plaintiffs"), state that a motion to dismiss should not be granted "unless it appears beyond doubt that the [plaintiff] can prove no set of facts in support of [its] claim which would entitle [it] to relief."  Memorandum of Law in Support of Objection to Laura Drainville's Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss First Amended Cross-Claim ("Cross-Claim Plaintiffs' Mem.") at 3 (alterations in original).  This observation from <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct.

required to "credit bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." <u>Aponte-Torres v. Univ. of Puerto Rico</u>, 445 F.3d 50, 54 (1st Cir. 2006)(internal quotation marks omitted); <u>see also</u> <u>Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev.</u>, 421 F.3d at 5 (same).  Rule 12(b)(6) is forgiving, <u>see</u> <u>Campagna v. Mass. Dep't of Envtl. Prot.</u>, 334 F.3d 150, 155 (1st Cir. 2003), but it "is not entirely a toothless tiger," <u>Rivera v. Rhode Island</u>, 402 F.3d 27, 33 (1st Cir. 2005) (quoting <u>Educadores Puertorriquenos en Accion v. Hernandez</u>, 367 F.3d 61, 67 (1st Cir. 2004)(quoting <u>Dartmouth Review v. Dartmouth Coll.</u>, 889 F.2d 13, 16 (1st Cir. 1989))).  A plaintiff must allege facts in support of "each material element necessary to sustain recovery under some actionable legal theory." <u>Campagna v. Mass. Dep't of Envtl. Prot.</u>, 334 F.3d at 155.

## III. Discussion

### A. Jurisdiction

As filed, the Motion appears to seek dismissal of the entire Amended Cross-Claim for lack of jurisdiction.  <u>See</u> Motion at 3 ("the cross-claim should be dismissed with prejudice").  However, at the August 27, 2008, hearing counsel for Laura conceded that diversity jurisdiction is properly pled in the Amended Cross-Claim.  No discussion of jurisdiction is, therefore, necessary, and the Court proceeds directly to consideration of the

---

99, 102 (1957), has been abrogated by <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, ___, 127 S.Ct. 1955, 1969 (2007)("<u>Conley's</u> 'no set of facts' language has been questioned, criticized, and explained away long enough"); <u>id.</u> ("this famous observation has earned its retirement"); <u>see also</u> <u>ACA Fin. Guar. Corp. v. Advest, Inc.</u>, 512 F.3d 46, 58 (1st Cir. 2008)("The Supreme Court has recently altered the Rule 12(b)(6) standard in a manner which gives it more heft.  In order to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'")(quoting <u>Bell Atl. Corp.</u>, 550 U.S. at ___, 127 S.Ct. at 1967).

individual counts.

**B.   Counts**

**1.   Count I (Unjust Enrichment/Constructive Trust**)

To establish a claim for unjust enrichment under Rhode
Island law, a plaintiff must prove three elements: 1) a benefit
must be conferred upon the defendant by the plaintiff, 2) there
must be appreciation by the defendant of such benefit, and 3)
there must be an acceptance of such benefit in such circumstances
that it would be inequitable for a defendant to retain the
benefit without paying the value thereof.  APG, Inc. v MCI
Telecomms. Corp., 436 F.3d 294, 305 (1st Cir. 2006); see also
Narragansett Elec. Co. v. Carbone, 898 A.2d 87, 99 (R.I. 2006).
Laura argues that the Amended Cross-Claim contains no allegations
that she has received anything from Paul Jr. and Stephanie, that
there is no allegation that either Paul Jr. or Stephanie provided
anything to her, and that there is no allegation that she
accepted anything of value from them.  Motion at 8.

At the hearing, counsel for Cross-Claim Plaintiffs (Paul Jr.
and Stephanie) identified the benefit which Laura allegedly
received as being her receipt of Paul Sr.'s real and personal
assets, "some of which should have been made available to satisfy
financial obligations under the Agreement."[4]  Amended Cross-Claim
¶ 32.  Counsel also argued that Laura was benefitted because
Cross-Claim Plaintiffs did not initiate any legal action in
Florida to challenge her entitlement to Paul Sr.'s real and
personal assets.

Under the doctrine of unjust enrichment, the concept of
benefit is construed broadly:

---

[4] The Court refers to the argument made by counsel for
Cross-Claim Plaintiffs at the hearing with respect to this count
because the count is not addressed in his memorandum.  See Cross-
Claim Plaintiffs' Mem.

> a person confers a benefit upon another if he [or she]
> ... satisfies a debt or a duty of the other, or in any
> way adds to the other's security or advantage.  He [or
> she] confers a benefit not only where he [or she] adds to
> the property of another, but also where he [or she] saves
> the other from expense or loss.  The word "benefit,"
> therefore, denotes any form of advantage.

State v. Lead Indus. Ass'n, Inc., No. 99-5226, 2001 WL 345830, at

*15 (R.I. Super. Apr. 2, 2001)(quoting Restatement of Restitution

§ 1, cmt. b at 12 (1937))(alterations in original).  However,

even construing "benefit" broadly, this Court has doubts that

refraining from legal action to challenge Laura's receipt of Paul

Sr.'s real and personal assets constitutes a legally cognizable

"benefit" which Cross-Claim Plaintiffs conferred upon Laura.  The

Court's research has not found any case where refraining from

legal action has been held to be a "benefit" which gives rise to

a claim for unjust enrichment.

     Nevertheless, it is unnecessary to resolve this issue for

purposes of the instant Motion because the cause of action pled

in Count I also encompasses (or pleads alternatively) a claim for

a constructive trust, and this claim is adequately pled.  The

Amended Cross-Claim alleges that a confidential relationship

existed between Laura and her stepchildren, Paul Jr. and

Stephanie, see Amended Cross-Claim ¶ 38, that Laura breached this

confidential relationship, see id. ¶ 39, and that a constructive

trust should be imposed on the life insurance proceeds presently

on deposit with the Registry of this Court, see id. ¶ 40, and also on

the real and personal property previously owned by Paul Sr. and now in

the possession of Laura, see id. ¶ 41.  These allegations are

sufficient to allege a constructive trust claim.  See Dellagrotta

v. Dellagrotta, 873 A.2d 101, 111 (R.I. 2005)(stating that the

essential elements of a constructive trust claim "are the

existence of a fiduciary or confidential relationship between the

parties and either a breach of a fiduciary duty or fraud

resulting from the parties['] confidential association"); <u>see also</u> <u>Manchester v. Pereira</u>, 926 A.2d 1005, 1012 (R.I. 2007) ("[T]he underlying principle of a constructive trust is the equitable prevention of unjust enrichment of one party at the expense of another in situations in which legal title to property was obtained by fraud or in violation of a fiduciary or confidential relationship.")(quoting <u>Renaud v. Ewart</u>, 712 A.2d 884, 885 (R.I. 1998)); <u>Desnoyers v. Metro. Life Ins. Co.</u>, 272 A.2d 683, 690 (R.I. 1971)("A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.").

In reaching the conclusion that the Motion should be denied as to this Count, the Court is influenced by the reasoning and result in <u>Irwin v. Principal Life Insurance Co.</u>, No. 04-4052-JAR, 2005 WL 3470359 (D. Kan. Dec. 16, 2005), a case with substantial similarities to the instant matter.  The <u>Irwin</u> court found that a temporary restraining order ("TRO"), which prohibited the decedent from changing beneficiaries on any policies of insurance, did not meet the statutory definition of a qualified domestic relations order.  <u>See</u> <u>id.</u> at *10.  Therefore, the court concluded that a change of beneficiary form, which the decedent had executed in violation of the TRO and which named his father as primary beneficiary of the insurance policies, was effective. <u>See</u> <u>id.</u> at *11.  The father was, thus, entitled to the life insurance proceeds on deposit with the court.  <u>See</u> <u>id.</u>  However, the court found that the decedent had committed an actual or constructive fraud on the domestic relations court and his widow[5]

---

[5] The decedent in <u>Irwin v. Principal Life Insurance Co.</u>, No. 04-4052-JAR, 2005 WL 3470359 (D. Kan. Dec. 16, 2005), died two months after being served with the domestic relations TRO.  <u>See</u> <u>id.</u> at *1.  No divorce decree was ever entered.  <u>See</u> <u>id.</u>

by violating the TRO and that the award of insurance benefits to
his father "would allow for unjust enrichment." Id. at *13.
Accordingly, the court, utilizing its equitable powers, imposed a
constructive trust on the life insurance proceeds for the benefit
of the decedent's widow. See id.

As Count I is the only count in which Cross-Claim Plaintiffs
seek imposition of a constructive trust, granting the Motion as
to this count would suggest that this avenue of relief is not
available to Cross-Claim Plaintiffs should the Court ultimately
make findings similar to those made by the court in Irwin.  The
Court declines to make such a ruling at this juncture, especially
where Paul Jr. and Stephanie have adequately pled the elements of
a constructive trust claim.  Accordingly, I recommend that the
Motion be denied as to Count I.

### 2.  Count II (Tortious Interference)

The elements of a claim for tortious interference with
contractual relations under Rhode Island law are: 1) the
existence of a contract, 2) defendant's personal knowledge of the
contract, 3) defendant's intentional interference with the
contract, and 4) damages caused by the interference with the
contract.  See APG, Inc. v. MCI Telecomms. Corp., 436 F.3d at
303; see also W. Mass. Blasting Corp. v. Metro. Prop. & Cas. Ins.
Co., 783 A.2d 398, 401 (R.I. 2001).  Laura asserts that there are
no allegations in the Amended Cross-Claim that she intentionally
did anything to "coerce, cajole, force, threaten, nag, annoy or
take any action that made or compelled the Decedent[] to change
any beneficiary designation from anyone to anyone."  Motion at 8.
Laura further asserts that there is no allegation that she knew
the contents of the agreement.  See id. at 8-9.

Cross-Claim Plaintiffs respond to Laura's argument by
stating that there is no requirement under Rhode Island law when
pleading a claim for tortious interference to allege or prove

10

coercion, cajoling, threats, or annoyance.  <u>See</u> Memorandum of Law
in Support of Objection to Laura Drainville's Rule 12(b)(1) and
Rule 12(b)(6) Motion to Dismiss First Amended Cross-Claim
("Cross-Claim Plaintiffs' Mem.") at 5.  With respect to Laura's
second assertion, Cross-Claim Plaintiffs cite paragraph 47 of the
Amended Cross-Claim which alleges that "[p]rior to the death of
Paul Drainville, Laura Drainville was aware of the existence of
the Agreement."  Amended Cross-Claim ¶ 47.  Thus, Laura is
mistaken in her assertion there is no allegation that she knew
the contents of the Agreement.[6]

The Court agrees with Cross-Claim Plaintiffs that they are
not required to allege anything more than the four elements
stated above in <u>APG, Inc. v. MCI Telecommunications Corp.</u>  Here
they have alleged: 1) that the Agreement constitutes a contract,
Amended Cross-Claim ¶ 43; 2) that Laura was aware of the
existence of the Agreement prior to Paul Sr.'s death, <u>see id.</u> ¶
47; 3) that Laura intentionally interfered with Cross-Claim
Plaintiffs' rights under the Agreement, <u>see id.</u> ¶ 51; and 4)
that they sustained damages as a result of Laura's interference,

---

[6] To the extent Laura may contend that Cross-Claim
Plaintiffs must allege not only that she "was aware of the
existence of the Agreement," Amended Cross-Claim ¶ 47, but also
allege that she knew about the particular provisions which
required Paul Sr. to maintain life insurance policies for the
benefit of Cross-Claim Plaintiffs and contribute to the cost of
Stephanie's tuition, such minute specificity and technical
pleading is not required by the Rules of Civil Procedure, <u>see
Boston & Maine Corp. v. Town of Hampton</u>, 987 F.2d 855, 865 (1st
Cir. 1993)("One purpose of breaking from fact pleading was to
avoid the specter of technical pleading requirements and focus
more squarely on the merits.  The Federal Rules reject the
approach that pleading is a game of skill in which one misstep by
counsel may be decisive to the outcome and accept the principle
that the purpose of pleading is to facilitate a proper decision
on the merits.")(internal quotation marks omitted), <u>overruled on
other grounds by</u> <u>Educadores Puertorriquenos en Accion v.
Hernandez</u>, 367 F.3d 61, 63-64 (1st Cir. 2004).

<u>see</u> <u>id.</u> ¶ 53.  This adequately pleads a claim for tortious interference.  Accordingly, the Motion should be denied as to Count II, and I so recommend.

### 3.   Count III (Conversion – Life Insurance Proceeds and Assets)

To maintain an action for conversion, a plaintiff must establish that it was in possession of the personalty, or entitled to possession of the personalty, at the time of conversion.  <u>Narragansett Elec. Co. v. Carbone</u>, 898 A.2d at 97 (quoting <u>Montecalvo v. Mandarelli</u>, 682 A.2d 918, 928 (R.I. 1996)).  "[T]he gravamen of an action for conversion lies in the defendant's taking the plaintiff's personalty without consent and exercising dominion over it inconsistent with the plaintiff's right to possession."  <u>Id.</u> (quoting <u>Fuscellaro v. Indus. Nat'l Corp.</u>, 368 A.2d 1227, 1230 (1977)).  "This intentional exercise of control over the plaintiff's chattel must 'so seriously interfere[] with the right of another to control it that the [defendant] may justly be required to pay the other the full value of the chattel.'"  <u>Id.</u> (quoting <u>Montecalvo</u>, 682 A.2d at 928 (quoting Restatement (Second) Torts § 222(A)(1) at 431 (1965))) (alterations in original).

Laura argues, in effect, that the Amended Cross-Claim fails to state a claim for common law conversion because the pleading fails to allege that she has taken wrongful possession of the Plan benefits.  <u>See</u> Motion at 9.  She further argues that it is impossible for Cross-Claim Plaintiffs to make such an allegation because the life insurance proceeds are presently in the Court's Registry.  <u>See</u> <u>id.</u>  Thus, Laura posits that "a conversion cannot legally have occurred as of the time of pleading and this Count should be dismissed with prejudice."  <u>Id.</u>

Cross-Claim Plaintiffs respond that Laura by making and continuing to press a claim to the life insurance proceeds has

deprived them of the immediate possession and benefit of the life insurance proceeds.  See Cross-Claim Plaintiffs' Mem. at 6.  The Amended Cross-Claim contains such allegations.  See Amended Cross-Claim ¶¶ 57, 67.

The Court's research has found no case which directly supports Cross-Claim Plaintiffs' argument with respect to whether an action for conversion can be maintained regarding the life insurance proceeds in the circumstances presented by the instant case.  In Coots v. Allstate Life Insurance Co., 313 F.Supp.2d 539 (D. Md. 2004), the court granted a motion to dismiss a conversion claim where the plaintiff failed to allege "that the minor children ever had been in actual possession or ever had a right to immediate possession of the life insurance proceeds."  Id. at 544.  However, the Coots court, applying Maryland law, also noted "that money cannot be the subject of conversion," id. at 543, and held that "the complaint utterly fails to the extent that it focuses on the proceeds paid under an insurance contract, rather than the physical contract itself," id.  In Crosby v. Crosby, 769 F.Supp. 197 (D. Md. 1991), the court denied plaintiff's motion for summary judgment on her conversion claim because she "produced no evidence which shows that she has ever been in actual possession of the property she seeks nor that she has ever had a right to immediate possession of the property."  Id. at 200.  Here, the Cross-Claim Plaintiffs' affirmative allegation that they had a right to the immediate possession of the life insurance proceeds, see Amended Cross-Claim ¶¶ 56-57, avoids this particular failing which contributed to the demise of the plaintiffs' conversion claims in Coots and Crosby.  However, whether Cross-Claim Plaintiffs' allegations are sufficient to state a cause for common law conversion with respect to the life insurance proceeds is far less clear.

Again, however, the Court need not resolve this particular

question at this juncture because other allegations in Count III
state a claim for conversion.  Cross-Claim Plaintiffs also allege
that Laura exercised dominion and control over Paul Sr.'s real
and personal assets following his death, Amended Cross-Claim ¶¶
29, 66,[7] and that some of Paul Sr.'s real and personal assets
should have been made available to satisfy financial obligations
under the Agreement and liabilities owed to Cross-Claim
Plaintiffs, id. ¶¶ 32-33.  The Court construes these allegations,
along with the allegation that Laura did not initiate formal
probate proceedings or open an estate in Florida, see id. ¶ 30,
to mean that Cross-Claim Plaintiffs claim that they, as the
natural children of Paul Sr., may have been entitled to personal
property owned by their father and that Laura has taken
possession of this property without their consent, see id. ¶¶ 66-

---

[7] The allegations of ¶ 29 are incorporated by reference into
Count III.  See Amended Cross-Claim ¶ 54.  Thus, for purposes of
determining the instant Motion, Count III includes not only the
allegation that Laura exercised dominion and control over real
and personal property which she jointly owned with Paul Sr., id.
¶¶ 65-66, but also Paul Sr.'s real and personal assets, id. ¶¶
29-30, which "were assigned to or inherited by Laura Drainville
outside of probate upon his death," id. ¶ 31.
    Laura objects to the incorporation.  See Motion at 3
(arguing that it makes for "inconsistency, repugnancy, and
redundancy").  The Court agrees that two of the incorporating
paragraphs, 42 and 54, as presently expressed, may cause
confusion and that they would be improved by only incorporating
those prior paragraphs necessary for the cause of action being
alleged in the particular count, see id.  Accordingly, the Court
is recommending that the Motion be granted to the extent that
Cross-Claim Plaintiffs be required to file a second amending
cross-claim, limiting the incorporation of paragraphs in each
count to those necessary to the cause of action being alleged.
To the extent that Laura seeks dismissal of Counts I, II, and III
because of the incorporation of other paragraphs, the Court
recommends the Motion be denied.

67.[8]

In short, the allegations that Laura took possession of
personalty which belonged to Paul Sr., that Cross-Claim
Plaintiffs have a legal right to the immediate possession and
benefit of this personalty,[9] and that Laura is exercising
dominion and control over the personalty without their consent is
sufficient to save this cause of action.  Therefore, the Motion
should be denied as to Count III, and I so recommend.

C.  **Incorporation by Reference**

As previously noted, see n.7 supra, Laura seeks dismissal of
the Amended Cross-Claim because Cross-Claim Plaintiffs have
allegedly failed to properly plead their claims.  Laura asserts
that Counts II, III, and IV incorporate by reference all of the
paragraphs which precede each count, "making for inconsistency,
repugnancy and redundancy."  Motion at 3.  While Laura is

---

[8] Strictly speaking, ¶¶ 59-66 of the Amended Cross-Claim
refer only to Stephanie's right under the Agreement to financial
assistance with college costs.  See Amended Cross-Claim ¶¶ 59-66.
In particular, ¶ 66 only alleges that Laura "has exercised
dominion and control over jointly owned real and personal
property without Stephanie's consent."  Id. ¶ 66.  No mention is
made of Paul Jr. in this paragraph.  See id.  However, ¶ 33,
which is incorporated by reference, see ¶ 54, alleges that Paul
Sr.'s real and personal assets should have been "made available
to satisfy liabilities owed to Paul and Stephanie under the
Agreement," id. ¶ 33.  Paragraph 67 alleges that Laura is
exercising dominion and control over "said assets ... that is
inconsistent with Stephanie's right and Paul's right to immediate
possession and benefit, thus causing Stephanie and Paul to suffer
damages."  Id. ¶ 67; see also id. ¶¶ 31, 54, 66.  These
additional allegations are sufficient to fairly convey to the
reader that Laura's exercise of dominion over this personal
property is without the consent of both Paul Jr. and Stephanie.

[9] At the hearing, counsel for Cross-Claim Plaintiffs noted
that because there was no probate proceeding or other accounting,
they do not know what property Paul Sr. owned at the time of his
death.

15

mistaken with respect to Count IV, which only incorporates paragraphs 1-13, with respect to Counts II and III she is correct.  The Court agrees that the wholesale incorporation of all preceding paragraphs into Counts II and III, see Amended Cross-Claim ¶¶ 42, 54, is confusing.  The literal effect of this incorporation is to allege multiple causes of action within Counts II and III.  This undermines the whole purpose of separating the causes of action into different counts.

Accordingly, to the extent that the Motion seeks to have Cross-Claim Plaintiffs file a second amended cross-claim which incorporates only the prior paragraphs which are necessary to support the cause of action being pled in each count, the Motion should be granted.  I so recommend.  To the extent that the Motion may seek a greater sanction for such incorporation by reference, I recommend that the Motion be denied.

**IV.  Summary**

To the extent that the Motion seeks dismissal because of an alleged lack of jurisdiction, the Motion should be denied because diversity jurisdiction is properly pled.  As to Count I, the Motion should be denied because Cross-Claim Plaintiffs have adequately pled a constructive trust claim even though their claim for unjust enrichment may not be sustainable.  Count II survives the Motion because it adequately pleads a claim for tortious interference.  Similarly, Count III adequately pleads a conversion claim, at least with respect to the personalty owed by Paul Sr. over which Laura is exercising dominion and control.  Accordingly, to the extent that the Motion seeks dismissal of Counts I, II, and III for failing to state a claim under state law, it should be denied.  To the extent that the Motion seeks to require Cross-Claim Plaintiffs to file a second amended cross-claim, which does not contain the redundancy which results from the incorporating by reference of all preceding paragraphs, see

16

Amended Cross-Claim ¶¶ 42, 54, the Motion should be granted.

## V.   Conclusion

For the reasons stated above, I recommend that the Motion to Dismiss be granted to the extent that it seeks to require Cross-Claim Plaintiffs to file a second amended cross-claim and to incorporate into each count only those preceding paragraphs which are necessary to the cause of action being alleged in that count. In all other respects, I recommend that the Motion be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days[10] of its receipt.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
March 31, 2009

---

[10] The ten days do not include intermediate Saturdays, Sundays, and legal holidays.  See Fed. R. Civ. P. 6(a).

17